UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                )<br>)<br>(3) JANE BUCKINGHAM,      )<br>)<br>                    Defendant       )<br>) | Criminal No.: 19-10117-IT-3 |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The government respectfully submits this supplemental memorandum in connection with the sentencing of defendant Jane Buckingham.

Buckingham, the bestselling author of a "The Modern Girl's Guide to Motherhood" and the founder of a successful marketing firm, paid co-conspirator William "Rick" Singer $50,000 to have a corrupt proctor take the ACT exam for her son.[1]  As part of the scheme, Buckingham came up with the idea of having the proctor, Mark Riddell, take the exam without Buckingham's son even present.  Later, Buckingham acknowledged that the cheating scheme was "shady," but told Singer she wanted to pursue it again, this time for her daughter.  Ultimately, Buckingham was arrested before she had an opportunity to engage in the fraud a second time.

For her crime, Buckingham should be sentenced to a term of six months of incarceration, 12 months of supervised release, and a fine of $40,000.

---

[1] Buckingham is the founder and chief executive officer of Trendera, LCC.

I.  **Buckingham Proposed Having Riddell Take the Exam
and Administered a Fake Exam to her Son To Facilitate the Scheme**

Buckingham's son took the ACT exam twice on his own, in the winter and spring of 2018, placing in the 92nd and 94th percentile, respectively. *See* Ex. A (February 2018 ACT Score Report); Ex. B (April 2018 ACT Score Report). Buckingham told Singer she believed these scores were insufficient for her son to get in to the college of his choice – the University of Southern California ("USC") – because his grades were a "problem." *See, e.g.*, Ex. C at 2 (October 29, 2018 call transcript).[2]

By June 2018, Buckingham had agreed with Singer to cheat on the exam to improve her son's scores. In a call on June 19, 2018, Buckingham and Singer discussed when Singer's "person" – Riddell – would be available to proctor the exam at Singer's corrupt testing facility in Houston. *See* Ex. D at 3 (June 19, 2018 call transcript). Buckingham agreed to fabricate an excuse to mislead her son's high school about why he would take the exam in Houston, more than 1,500 miles from their Los Angeles home. *See, e.g.*, *id*. ("I mean, he could just be in Houston for the weekend because we have something in Houston that weekend."). Later that month, Buckingham also misled the ACT by falsely claiming that her son needed to take the test in Houston because they would "be in Houston this summer . . . ." Ex. E (June 29, 2018 e-mail chain).

Buckingham discussed the mechanics of the scheme with Singer in detail, including the fact that it required bribing Niki Williams, the Houston test administer, to permit Riddell to correct her son's answers. *See* Ex. F (July 10, 2018 call transcript); *see also* Ex. G (July 2, 2018 e-mail

---

[2] At around this time, Buckingham expressed interest in pursuing Singer's "side door" scheme to facilitate her son's admission to USC as a purported athletic recruit. *See* Pre-Sentence Report ("PSR") at ¶¶ 49 & 50. In August 2018, Buckingham emailed Singer her son's transcripts and test scores, together with photographs of her son in a soccer uniform holding a ball. *See* Pre-Sentence Report ("PSR") at ¶ 51. Singer forwarded the photos to co-conspirator Laura Janke, who prepared fake athletic profiles for the children of Singer's clients. *Id*. at ¶ 52. Ultimately, Buckingham decided to use her own contacts at USC to pursue admission for her son in lieu of the recruitment scheme. *Id*. at ¶ 53.

identifying Williams as the test coordinator in Houston). Buckingham also knew that the scheme depended on using her son's testing accommodation – which allowed him to take the exam with extended time over successive days – to accomplish the fraud, but told Singer that she did not intend for him to use the additional time. *See* Ex. F at 1 (Singer confirms that the test will occur over one day because "Mark is only flying in from Florida for one day.").

When a physician subsequently advised Buckingham that her son would not be able to fly to Houston due to a medical condition, Buckingham asked Singer if it would be possible for Riddell simply to take the test in his place – while she administered a fake exam to her son at home in Los Angeles. *See* Ex. H at 1 (July 12, 2018 call transcript, in which Buckingham said to Singer: "So my question is there is no way for him to not go and it still to be done I assume?" and "can you give me a test for [my son] to take at home . . . that I proctor him?"). Singer told Buckingham that he had to check with Williams before agreeing to her proposal, *id*. at 1, but later told her that Williams would go along with the plan if she were paid ahead of time. *See* Ex. I at 1 (July 12, 2018 call transcript) ("So Niki is willing to do it. . . . Your donation is gonna be [$]50[,000]. It'll end up being through our foundation. . . . And I'm already sending a check to the proctor [*i.e.*, Riddell] today, and to Niki [Williams] today, 'cause she said, 'I gotta have the money first.'"). Singer told Buckingham that she would need to pay for the scheme by sending $50,000 to his foundation, and that he would then send "checks to all the parties." *Id*. at 2. Buckingham agreed, adding:

> I know this is craziness. I know it is. And then I need you to get him into USC, and then I need you to cure cancer and [make peace] in the Middle East.

*Id*.

The following day, Singer told Buckingham he needed a handwriting sample from her son because Riddell would need to mimic his script. *See* Ex. J (July 13, 2019 call transcript). Shortly thereafter, Buckingham e-mailed the sample depicted below, adding, "Good luck with this."







Ex. K (July 13, 2018 e-mail chain and attachment).

Riddell took the exam by himself in a Houston-area hotel room on July 14, 2018. Singer emailed Buckingham the next day that the "[t]est went well." Ex. L (July 15, 2018 e-mail). Three days later, Buckingham wired $35,000 to Singer's sham charity, the Key Worldwide Foundation ("KWF"), as a partial payment for the scheme. Buckingham advised Singer that she intended to have her former husband pay the remaining $15,000 she owed. *See* Ex. M (July 17, 2018 e-mail chain).

Buckingham's son received a score of 35 on the ACT, ranking in the 99th percentile, and used the score as part of his application to multiple universities. *See* Ex. N (July 2018 ACT Score Report).

In October 2018, Buckingham told Singer that she would "probably like to do the same thing with [my daughter] with her ACTs" because she is "not a great test taker." Ex. C at 9. She noted that they would not "need to get a 35" to be admitted to her daughter's preferred schools,

adding: "but if she got a 32 or 33, I'm assuming that would make her pretty competitive." *Id*. Buckingham was arrested before she was able to pursue the scheme further.

In a November 2018, Buckingham told Singer that her ex-husband left her a note that said: "I just found out what you did and I'm so upset I can't talk about it." Ex. O (November 15, 2018 call transcript). Buckingham told Singer she was "wracking [her] brain" about what she may have done, and "the only thing kind of shady that I've done is the whole [son's name] thing." *Id*. After Singer confirmed that he did not mention the cheating scheme to her ex-husband, Buckingham continued: "All right. So that's not the horrible thing that I've done. Clearly I've done something else horrible and terrible." *Id*.

## II. Buckingham Should be Sentenced to a Meaningful Term of Incarceration

While other defendants who were involved in the testing scheme agreed with Singer to have a corrupt proctor correct their children's answers, Buckingham was more deeply engaged in the mechanics of the fraud than many of the other parents who have appeared before this Court for sentencing. Alone among these defendants, she suggested having Riddell simply take the exam outright while her son recuperated at home. She also came up with the idea of administering a practice test to her son at home, so that he would think he had taken the test himself. Buckingham misled the ACT about why her son purportedly needed to take the test in Houston and agreed to mislead her son's high school about why he wouldn't take it there. And she had her son create a handwriting sample so that Riddell could mimic his handwriting on the test. In short, Buckingham did not simply go along with the plan Singer proposed, but suggested taking it a step further when her son's illness threatened to derail the scheme.

To her credit, Buckingham was unwilling to bring her son in on the fraud, as some parents did. At the same time, the scheme she came up with was more brazen than simply having a proctor

secretly correct the answers after her son completed the test on his own.  Both are frauds, but Buckingham's was a complete fraud.  She deprived her son of even the opportunity to get *any* of the answers right on his own.[3]

And although she acknowledged that the scheme was "craziness" and described it as "shady," she was unphased by that fact.  See Instead, she was singularly focused on getting her son into a school – USC – and she pursued the scheme aggressively out of a concern that his legitimately obtained score in the 94th percentile wouldn't be sufficient for him to get in on his own merits.  She was unwilling to let anything stand in the way of that goal.  When her son's illness threatened to interfere with her plans, she doubled down and proposed an even bolder fraud.  She likewise considered the "side door" scheme – even providing Singer the materials to create a fake athletic profile – changing course only after concluding that her own connections at USC would give her son a sufficient advantage.

And after the exam scheme worked once, Buckingham prepared to do it all over again for her daughter.  This time, she told Singer that she wanted to buy a score of 32, because that would "make her [daughter] pretty competitive."  Only her arrest stopped Buckingham from engaging in fraud again.

Of course, with Buckingham, as with every defendant, it is important to place her actions in the context of her life and accomplishments, and the government's sentencing recommendation takes account of Buckingham's life history and the fact that she has sole custody of her high school aged daughter.  At the same time, nothing about her history excuses her conduct, nor is her custody arrangement the type of exceptional circumstance that warrants a lesser sentence.  Buckingham's

---

[3] Buckingham also tried to have her former husband unwittingly subsidize her crime.  *See* Ex. M ("I asked [KWF employee] in your office if they could split the invoice into two as I will have [my ex-husband] pay for 15K for ACT prep[.]").

crime was at least as serious and considered as that of other defendants who have been sentenced to prison. Considerations of just punishment, general deterrence and the need to avoid unwarranted sentencing disparities all warrant the imposition of a meaningful term of incarceration in this case.

## Conclusion

For her crime, Buckingham should be sentenced to a term of six months of incarceration followed by 12 months of supervised release, and a fine of $40,000.

                                                   Respectfully submitted,

                                                   ANDREW E. LELLING
                                                 United States Attorney

By:    */s/ Justin D. O'Connell*
        ERIC S. ROSEN
        JUSTIN D. O'CONNELL
        LESLIE A. WRIGHT
        KRISTEN A. KEARNEY
        Assistant United States Attorneys

Date: October 16, 2019

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 16, 2019, this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

      By:   */s/ Justin D. O'Connell*
               Justin D. O'Connell
               Assistant United States Attorney